UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DIEGO TRUJILLO CLAROS,

      Petitioner,

v.                                                                                Case No: 6:26-cv-208-JSS-LHP

LOUIS A. QUINONES, JR.,
IMMIGRATION & CUSTOMS
ENFORCEMENT (ICE), KRISTI
NOEM, and DEPARTMENT OF
HOMELAND SECURITY (DHS),

      Respondents.
_____/

## **ORDER**

Petitioner, Diego Trujillo Claros, initiated this case by filing a petition for writ

of habeas corpus under 28 U.S.C. § 2241.  (Dkt. 1.)  To prevent Respondents from

transferring him to another facility or "otherwise altering his custodial status,"

Petitioner moves for entry of an ex parte temporary restraining order (TRO).  (Dkt. 2.)

Upon consideration, for the reasons outlined below, the court grants the motion and

issues a TRO that requires Respondents to preserve the status quo.

## **BACKGROUND**

In his petition, Petitioner asserts that he "is lawfully present in the United States,

possesses a valid Florida driver's license, Social Security number, [and] employment

authorization, and has a pending asylum application." (Dkt. 1 at 3.)  According to the

petition, "Petitioner was released into [the] United States after his initial entry with an

Order of Release on Recognizance." (*Id.*) Petitioner has submitted documentary evidence to support these assertions. (*See id.* at 8–11.) He maintains that his continued detention lacks probable cause, violates due process, and is otherwise unlawful in the absence of a bond hearing. (*Id.* at 2–4.) Accordingly, Petitioner seeks the following relief: (1) a writ of habeas corpus directing his immediate release, (2) preliminary injunctive relief prohibiting Respondents from transferring him pending the resolution of this case, (3) a declaration that Petitioner's detention based solely on an ICE detainer is unlawful, and (4) expedited proceedings. (*Id.* at 5.)

**APPLICABLE STANDARDS**

Federal Rule of Civil Procedure 65 governs TROs. *See* Fed. R. Civ. P. 65(b)–(d). The court cannot grant a petitioner's motion for a TRO without notice to the respondent unless "specific facts," supported by evidence, "clearly show that immediate and irreparable injury, loss, or damage will result to the [petitioner] before the [respondent] can be heard in opposition" and the petitioner's "attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1); *see* Local Rule 6.01(a)(2) ("A motion for temporary restraining order must include . . . specific facts—supported by a verified complaint, an affidavit, or other evidence—demonstrating an entitlement to relief."). "Every [TRO] issued without notice must state the date and hour it was issued[,] describe the injury and state why it is irreparable[,] state why the order was issued without notice[,] and be promptly filed in the [C]lerk's [O]ffice and entered in the record." Fed. R. Civ.

P. 65(b)(2). "The [TRO] expires at the time after entry—not to exceed [fourteen] days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the [respondent] consents to a longer extension." *Id.* The Supreme Court has explained that such ex parte TROs "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974).

Whether issued with or without notice, "every [TRO] must . . . state the reasons why it issued[,] . . . state its terms specifically[,] and . . . describe in reasonable detail— and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). Rule 65 also states: "The court may issue . . . a [TRO] only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully . . . restrained." Fed. R. Civ. P. 65(c); *accord* M.D. Fla. R. 6.01(a)(4) (requiring a TRO motion to "include . . . a precise and verified explanation of the amount and form of the required security"). Still, the "court has [the] discretion to waive [the security] requirement imposed by Rule 65(c)." *Disability Rts. Fla., Inc. v. Jacobs*, 473 F. Supp. 3d 1335, 1340 (M.D. Fla. 2019) (citing *Baldree v. Cargill, Inc.*, 758 F. Supp. 704, 707–08 (M.D. Fla. 1990), *aff'd*, 925 F.2d 1474 (11th Cir. 1991)).

"A TRO or preliminary injunction is appropriate where the movant" satisfies four requirements: (1) "there is a substantial likelihood of success on the merits," (2) "the TRO or preliminary injunction is necessary to prevent irreparable injury," (3) "the

threatened injury outweighs the harm that the TRO or preliminary injunction would

cause to the non-movant," and (4) "the TRO or preliminary injunction would not be

averse to the public interest." *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032,

1034 (11th Cir. 2001); *accord* M.D. Fla. R. 6.01(b), 6.02(a)(1). A TRO "is an

extraordinary and drastic remedy not to be granted unless the movant clearly

establishes the burden of persuasion as to each of the four prerequisites." *Wall v. Ctrs.*

*for Disease Control & Prevention*, 543 F. Supp. 3d 1290, 1292 (M.D. Fla. 2021) (alteration

adopted and quotations omitted).

**ANALYSIS**

There are four prerequisites for obtaining a temporary restraining order. *See*

*Parker*, 275 F.3d at 1034. The court will address each in turn.

**A. Likelihood of Success on the Merits**

Petitioner has demonstrated a substantial likelihood of success on the merits to

obtain a TRO. "The Fifth Amendment, as well as the Fourteenth Amendment,

protects every [noncitizen within the jurisdiction of the United States] from

deprivation of life, liberty, or property without due process of law." *Mathews v. Diaz*,

426 U.S. 67, 77 (1976); *see Plyler v. Doe*, 457 U.S. 202, 210 (1982) ("Whatever his status

under the immigration laws, [a noncitizen] is surely a 'person' in any ordinary sense

of that term. [Noncitizens], even [noncitizens] whose presence in this country is

unlawful, have long been recognized as 'persons' guaranteed due process of law by the

Fifth and Fourteenth Amendments."); *Hincapie v. United States AG*, 604 F. App'x 882,

884 (11th Cir. 2015) ("The Fifth Amendment right to due process applies to non[]citizens in removal proceedings." (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)); *Rodriguez v. Quinones, Jr.*, No. 6:26-CV-187-PGB-DCI, 2026 WL 194218, at *2 (M.D. Fla. Jan. 26, 2026) ("Noncitizens present in the United States are entitled to due process under the Fifth Amendment[, . . . including] protection against deprivations of liberty, such as immigration detention, without due process of law." (quotation omitted)).  Accordingly, "[l]imitations like the Due Process Clause . . . restrict the Government's power to detain noncitizens," and "[c]ourts must review immigration procedures and ensure that they comport with the Constitution." *J.G. v. Warden, Irwin Cnty. Det. Ctr.*, 501 F. Supp. 3d 1331, 1334 (M.D. Ga. 2020) (citing *Demore v. Kim*, 538 U.S. 510 (2003)).

Here, the central issue is whether Petitioner's detention is governed by 8 U.S.C. § 1225 or 8 U.S.C. § 1226.  *Compare* 8 U.S.C. § 1225(b)(2)(A) *with* 8 U.S.C. § 1226(a).  This distinction matters because a noncitizen detained under section 1226 may be entitled to a bond hearing.  *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that [noncitizens] detained under [section] 1226(a) receive bond hearings at the outset of detention."); *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 579–80 (2022) ("Noncitizens detained under [section] 1226(a) receive bond hearings after the Government initially detains them.").

The Supreme Court analyzed the interplay between sections 1225 and 1226 in *Jennings v. Rodriguez*, U.S. 281, 288 (2018).  In *Jennings*, the Court explained that section 1225(b) "applies primarily" to noncitizens "seeking entry into the United

States." *Id.* at 297.  By contrast, section 1226 applies to noncitizens "already present in the United States." *Id.* at 303; *see Johnson*, 596 U.S. at 579 (explaining that section 1226(a) "governs the detention of certain noncitizens present in the country who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since they were admitted"); *Johnson v. Guzman Chavez*, 594 U.S. 523, 543 (2021) (differentiating between sections 1225 and 1226, noting that each represents a "sequential step[] of the removal process," as section 1225 "provides instructions for inspecting [noncitizens], expediting the removal of some, and referring others for a removal hearing" while section 1226 "authorizes the arrest and detention of [noncitizens] pending a decision on whether they are to be removed"); *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) ("8 U.S.C. § 1226[] provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal.").  Indeed, noncitizens present in the United States are treated differently from those seeking entry.  *See Zadvydas v. Davis*, 533 U.S. 678, 679 (2001) ("Once [a noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all persons within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent."); *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those [noncitizens] who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality.  In the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely on the threshold

of initial entry."); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (explaining that noncitizens "who have established connections in this country have due process rights in deportation proceedings," while those who are apprehended "at the threshold of initial entry" lack the same constitutional protections).

As the Supreme Court recognized in *Jennings*, sections 1225 and 1226 differentiate between noncitizens "seeking entry into the United States" and noncitizens who are "already present in the United States." 583 U.S. at 303. "Interpreting [section] 1225 to govern all noncitizens present in the country who had not been admitted leaves [section] 1226 with no apparent application." *Patel v. Hardin*, No. 2:25-CV-870-JES-NPM, 2025 WL 3442706, at \*5 (M.D. Fla. Dec. 1, 2025) (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)). Accordingly, most courts considering this issue have determined that noncitizens, like Petitioner, who are present in the United States and have pending asylum applications, fall under the permissive provisions of section 1226, entitling them to a bond hearing. *See Izaguirre v. Mordant*, No. 2:26-CV-00048-SPC-DNF, 2026 WL 194214, at \*1 (M.D. Fla. Jan. 26, 2026) (concluding that section 1226 applied to a noncitizen "who entered the country without inspection" and was later detained within the United States, thereby entitling him to a bond hearing); *Jacobo v. Ripa*, No. 2:25-CV-1190-KCD-NPM, 2026 WL 145460, at \*1 (M.D. Fla. Jan. 20, 2026) (determining that the detention of a noncitizen who "illegally entered the United States nearly [twenty] years ago" was governed by section 1226); *Ortiz v. Mordant*, No. 2:25-CV-1160-JES-DNF, 2026 WL 44815, at \*1 (M.D. Fla. Jan. 7, 2026) (concluding that section 1226 applied to a noncitizen who

"entered the United States without inspection," which required that he receive a bond hearing); *Ortiz v. Noem*, No. 3:25-CV-1386-MMH-MCR, 2025 WL 3653217, at *6 (M.D. Fla. Dec. 17, 2025) ("It is undisputed that [the petitioner] entered the United States without inspection and has been residing here since 2013. Thus, he is not properly detained under [section] 1225(b)(2). . . . Instead, his detention is governed by [section] 1226, and he is therefore entitled to a bond hearing before an immigration judge."); *Garcia v. Noem*, No. 2:25-CV-00879-SPC-NPM, 2025 WL 3041895, at *5 (M.D. Fla. Oct. 31, 2025) (determining that a noncitizen was entitled to a bond hearing under section 1226(a) because he was detained within the United States); *Lopez v. Hardin*, No. 2:25-CV-830-KCD-NPM, 2025 WL 3022245, at *2 (M.D. Fla. Oct. 29, 2025) (concluding that section 1226 applied to a noncitizen who illegally entered the United States and resided within this country for more than a decade before he was detained, thus entitling him to a bond hearing); *see also Castillo Reyes v. Rose*, No. 25-7138, 2026 WL 75816, at *1 n.2, *3–6 (E.D. Pa. Jan. 9, 2026) (observing that, in this context, most courts to have considered whether a noncitizen, arrested within the United States, is detained under section 1225 or section 1226 have concluded that the latter provision governs and that the noncitizen is entitled to a bond hearing before an immigration judge); *but see Lopez v. Dir. of Enf't Operations*, NO: 3:25-cv-1313-JEP-SJH Dkt. No. 9 (M.D. Fla. Jan. 26, 2026) (disagreeing with the statutory interpretation rooted in the cannon against surplusage, that noncitizens seeking admission form "a distinct and narrower class than applicants for admission," and declining to apply language from the United States Supreme Court's decision in *Jennings,* which the court

deemed inapposite dicta, while acknowledging that its interpretation represents a minority view).

In this case, Petitioner was arrested by the Orange County Sheriff's Office while physically present in the United States, "on the stated basis that he was allegedly undocumented." (Dkt. 1 at 2 (cleaned up).) Accordingly, it appears that section 1226, as opposed to section 1225, governs Petitioner's detention. *See Jennings*, U.S. at 303 (stating that section 1226 applies to noncitizens "already present in the United States"); *Johnson*, 596 U.S. at 579 (explaining that section 1226(a) "governs the detention of certain noncitizens present in the country who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since they were admitted"); *Diaz*, 53 F.4th at 1196 (explaining that section 1226, "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal"). Yet, according to Petitioner, he remains "confined at the Orange County Jail . . . without any judicial determination authorizing detention." (Dkt. 1 at 2.) Therefore, Petitioner's continued detention without a bond hearing likely violates federal law. *See Patel*, 2025 WL 3442706, at *5 ("As a noncitizen detained under [section] 1226(a), [the petitioner] has a right to a bond hearing."); *Izaguirre*, 2026 WL 194214, at *1 ("As a noncitizen detained under [section] 1226(a), [the petitioner] has a right to a bond hearing. . . . [His] mandatory detention under [section] 1225(b)(2) is [therefore] unlawful."); *Ortiz*, 2025 WL 3653217, at *6 (concluding that it was unlawful for the government to detain a noncitizen who entered the United States without inspection without the benefit of a bond hearing before an immigration judge).

## B. Irreparable Harm

"To establish irreparable harm, the movant must show that the injury is immediate and is not compensable by monetary damages." *Lead Creation Inc. v. Partnerships & Unincorporated Associations Identified on Schedule A*, No. 8:23-CV-49-CEH-CPT, 2023 WL 1993971, at *4 (M.D. Fla. Feb. 14, 2023) (quotation omitted). A TRO is required, as "the deprivation of constitutional rights . . . constitutes irreparable injury." *Gayle v. Meade*, 614 F. Supp. 3d 1175, 1205 (S.D. Fla. 2020) (quotation omitted); *Rodriguez*, 2026 WL 194218, at *2. "Without interim relief to maintain the status quo, [Petitioner] could be deported or removed from this [c]ourt's jurisdiction, effectively foreclosing any recourse." *Lopez*, 2025 WL 2732717, at *2; *see Soliman v. United States*, 296 F.3d 1237, 1243 (11th Cir. 2002) (finding that a challenge solely to the petitioner's detention became moot upon his deportation); *Moore v. Ashcroft*, 251 F.3d 919, 922 (11th Cir. 2001) (concluding that a petitioner's challenge to her detention survived a mootness challenge because she also challenged her order of removal). Given the possibility that he is being unlawfully detained, the court deems it necessary in the interests of justice for Petitioner to remain nearby at the Orange County Jail. Further, ordering that Petitioner not be transferred from the Orange County Jail serves the interests of fairness and efficiency. Petitioner has satisfied the court that irreparable harm will occur absent this relief.

## C. Balance of the Harms and Public Interest

"In exercising their sound discretion, courts of equity should pay particular

regard for the public consequences" when they provide injunctive relief. *Winter v. Nat.
Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The balance of equities and public interest
favors injunctive relief. Based on the allegations in the petition and the documentary
evidence, Petitioner is arguably unlawfully detained under section 1225. (*See* Dkts. 1,
2.) Petitioner has established not only that his threatened injuries outweigh the harms
that a TRO would cause Respondents but also that a TRO would serve the public
interest: ensuring due process maintains an appropriate balance of interests. *See
Zadvydas*, 533 U.S. at 690; *Mejia v. Noem*, No. 2:25-cv-981-SPC-NPM, 2025 WL
3078656, at *3, 2025 U.S. Dist. LEXIS 217352, at *7 (M.D. Fla. Nov. 4, 2025) (citing
*Tesfamichael v. Gonzales*, 411 F.3d 169, 178 (5th Cir. 2005), and *Rodriguez v. Robbins*,
715 F.3d 1127, 1145 (9th Cir. 2013)).

### D. Security

Finally, Federal Rule of Civil Procedure 65(c) specifies that the court "may issue
a . . . temporary restraining order only if the movant gives security in an amount that
the court considers proper to pay the costs and damages sustained by any party found
to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Security is
typically required, but "the amount . . . is a matter within the discretion of the trial
court, and the court may elect to require no security at all." *BellSouth
Telecommunications, Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971
(11th Cir. 2005) (alterations adopted and quotation omitted). Having considered the
matter, the court will exercise its discretion not to require security at this time. *See*

*Saint Remy v. Bondi*, No. 3:26-cv-28-MMH-SJH, 2026 U.S. Dist. LEXIS 5322, at *3 (M.D. Fla. Jan. 12, 2026) ("[B]ecause there is no realistic likelihood of prejudice to [the r]espondents from the issuance of this limited restraint, the [c]ourt exercises its discretion to dispense with the requirement that [the petitioner] provide security[.]"). That said, this issue may be revisited at any time, and a monetary security may be imposed should an application be made in the interest of justice.

## CONCLUSION

Accordingly:

1.    Petitioner's motion (Dkt. 2) is **GRANTED** as set forth in this order.

2.    The following TRO is **ENTERED**:

## <u>TEMPORARY RESTRAINING ORDER</u>

1.    Respondents and those in privity with them are hereby **TEMPORARILY ENJOINED** from transferring Petitioner from the Orange County Jail **until further order of the court**.

2.    Respondents shall respond in writing to the motion (Dkt. 2) by **February 6, 2026, at NOON** and show cause why the court should not convert this TRO to a preliminary injunction.

3.    The Clerk is **DIRECTED** to serve Respondents forthwith by serving copies of the petition (Dkt. 1) and this order in the following five ways: (1) email the United States Immigration and Customs Enforcement (ICE) (with attention to the Assistant Field Office Directors) at MIAAOR-Habeas-DG@ice.dhs.gov, (2)

email the United States Attorney's Office (USAO) at USAFLM.Orlando2241@usdoj.gov, (3) email courtesy copies to the Orange County Jail at the address on file with the Clerk's Office, (4) email courtesy copies to the United States Marshal Service at usms-mfl-orl@usdoj.gov, and (5) send copies via certified mail to the United States Attorneys Office and the United States Attorney General (USAG) at the physical addresses on file with the Clerk's Office.

4.  No monetary security shall be required, as the court deems it unnecessary at this time.

5.  The court will consider this matter at a hearing to be set by separate notice.

6.  The Clerk is **DIRECTED** to electronically send a copy of this order to the United States Attorney's Office in Orlando, Florida.

**ORDERED** in Orlando, Florida, at 4:00 PM ET on January 30, 2026.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties