UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DIEGO TRUJILLO CLAROS,

    Petitioner,

v.                                                   Case No: 6:26-cv-208-JSS-LHP

LOUIS A. QUINONES, JR.,
IMMIGRATION & CUSTOMS
ENFORCEMENT (ICE), KRISTI
NOEM, and DEPARTMENT OF
HOMELAND SECURITY (DHS),

    Respondents.
_____/

**ORDER**

Petitioner, Diego Trujillo Claros, initiated this case by filing a petition for writ of habeas corpus under 28 U.S.C. § 2241. (Dkt. 1.) To prevent Respondents from transferring him to another facility or "otherwise altering his custodial status," Petitioner moved for entry of an ex parte temporary restraining order (TRO). (Dkt. 2.) The court granted Petitioner's motion and entered a TRO requiring Respondents to keep Petitioner detained at the Orange County Jail pending the resolution of this case. (*See* Dkt. 5.) Upon granting the TRO, the court directed Respondents to explain why it should not convert the TRO to a preliminary injunction. (*Id.* at 12.) Thereafter, Respondents filed their opposition to the motion, (*see* Dkt. 12), and the court held an evidentiary hearing on the motion on February 10, 2026, (*see* Dkts. 6, 16). Upon consideration, for the reasons outlined below, the court converts the TRO to a

preliminary injunction.

## BACKGROUND

Petitioner is a citizen of Colombia who "entered the United States without inspection" on February 29, 2024. (Dkt. 12 at 1; *see* Dkt. 1 at 3; Dkt. 12-1 at 3.) Later that day, Petitioner was apprehended by United States Border Patrol officers and released on his own recognizance. (Dkt. 1 at 3, 9–10.) For nearly two years thereafter, Petitioner was allowed to live in the United States, without the need to check in with Respondent, the United States Immigration and Customs Enforcement (ICE). (*See id.*) However, in January of this year, Petitioner was arrested "on the stated basis that he was allegedly undocumented." (Dkt. 1 at 2; *see* Dkt. 12-2 at 2 (showing that Petitioner was taken into custody on January 23, 2026, "on immigration charges only"); Dkt. 15 ¶ 3 ("Petitioner was arrested on January 22[], 2026, by local authorities acting at the direction of ICE. No criminal charges were filed. No judicial warrant was issued. No neutral magistrate made a probable cause determination.").) Thereafter, Respondents purportedly transported Petitioner between the Orange County Jail and an ICE detention facility every forty-eight hours "to artificially extend detention while avoiding constitutional scrutiny." (Dkt. 15 ¶ 4.) All told, Petitioner has remained confined, without the benefit of an individualized bond hearing, for more than two weeks. (*See id.*)

At the hearing, Petitioner represented that he is not a dangerous individual and that he has committed no violations of law since entering the United States. Indeed, according to the Department of Homeland Security, Petitioner "has no known

criminal history." (Dkt. 12-2 at 2.)  Petitioner has also produced documentary evidence to show that he possesses a valid Florida driver's license and Social Security card and that he is authorized to work in this country. (*See* Dkt. 1 at 8–9). In addition, Petitioner has a pending asylum claim that is scheduled for a final hearing on June 23, 2026. (*See id*. at 3, 10–11; Dkt. 12-1).

Petitioner maintains that his continued detention lacks probable cause, violates due process, and is otherwise unlawful in the absence of a bond hearing. (Dkt. 1 at 2–4; *see* Dkt. 15.) Accordingly, Petitioner seeks the following relief: (1) a writ of habeas corpus directing his immediate release, (2) preliminary injunctive relief prohibiting Respondents from transferring him pending the resolution of this case, (3) a declaration that Petitioner's detention based solely on an ICE detainer is unlawful, and (4) expedited proceedings. (Dkt. 1 at 5.)

The parties submitted evidence before the evidentiary hearing, (*see, e.g.*, Dkt. 1 at 8–11; Dkt. 2 at 6–9; Dkts. 12-1, 12-2, 13-1), and did not introduce additional evidence or call witnesses at the hearing. Instead, the parties presented argument related to Petitioner's pleading (Dkt. 1) and the emergency motions (Dkts. 2, 15). Petitioner made three arguments. First, he argued that this court has jurisdiction over this case under 28 U.S.C. § 2241 because Petitioner does not challenge his removal, merely his detention without a bond hearing. Second, he maintained that given the United States Supreme Court's statements in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), and his nearly two years of living in the United States, 8 U.S.C. § 1226—not 8 U.S.C. § 1225—applied, thereby entitling him to a bond hearing. Third, he requested

immediate release, asserting that an order requiring a bond hearing before an immigration judge would be illusory because immigration judges are employed by, and serve at the pleasure of, Respondents and thus "lack independent authority to adjudicate Fourth Amendment violations or order release as a constitutional remedy." (Dkt. 15 ¶¶ 8–10.)  In response, Respondents contended that the plain text of sections 1225 and 1226, rather than *Jennings*, controls this case and requires the application of section 1225 such that Petitioner is not entitled to a bond hearing.  (*See* Dkt. 12 at 2–5.)  Still, Respondents "acknowledge the overwhelming volume of district court decisions" that state otherwise, and further "acknowledge that in this District alone, the overwhelming number of recent decisions have been adverse to Respondents' [s]ection 1225 position." (*Id.* at 2–3.)  Accordingly, Respondents alternatively argue that if section 1226 applies, the proper remedy is a bond hearing.  Still, Respondents represented that if the court determines that section 1226 applies, they will do what they can to expedite the bond hearing.

## APPLICABLE STANDARDS

Federal Rule of Civil Procedure 65 and Local Rules 6.01 and 6.02 govern preliminary injunctive relief, which constitutes an extraordinary remedy, *see Harbourside Place, LLC v. Town of Jupiter*, 958 F.3d 1308, 1313 (11th Cir. 2020).  Rule 65 requires "[e]very order granting an injunction" to "state the reasons why it issued[,] . . . state its terms specifically[,] and . . . describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1).  Rule 65 also states that "[t]he court may issue a

preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). That said, the "court has [the] discretion to waive [the security] requirement imposed by Rule 65(c)." *Disability Rts. Fla., Inc. v. Jacobs*, 473 F. Supp. 3d 1335, 1340 (M.D. Fla. 2019).

A "preliminary injunction is appropriate where the movant" satisfies four requirements: (1) the claim underlying the motion has "a substantial likelihood of success on the merits," (2) the "preliminary injunction is necessary to prevent irreparable injury," (3) "the threatened injury outweighs the harm that the . . . preliminary injunction would cause to the non-movant," and (4) the "preliminary injunction would not be averse to the public interest." *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034 (11th Cir. 2001); *accord* M.D. Fla. R. 6.01(b), 6.02(a)(1). A preliminary injunction cannot be granted "unless the movant clearly establishes the burden of persuasion as to each of the four prerequisites." *Wall v. Ctrs. for Disease Control & Prevention*, 543 F. Supp. 3d 1290, 1292 (M.D. Fla. 2021) (alteration adopted and quotations omitted).

## ANALYSIS

There are four prerequisites for obtaining a preliminary injunction. *See Parker*, 275 F.3d at 1034. The court will address each in turn.

### A. Likelihood of Success on the Merits

Petitioner has demonstrated a substantial likelihood of success on the merits to

convert the TRO to a preliminary injunction. First, regarding subject matter jurisdiction, district courts have jurisdiction to "consider[] challenges to the lawfulness of immigration-related detention . . . in habeas proceedings." *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Although the Immigration and Nationality Act (INA) contains jurisdiction-stripping provisions, they are narrow and do not apply here. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) ("[8 U.S.C. §]1252(b)(9) bars review of claims arising from actions or proceedings brought to remove [a noncitizen]. . . . [Section ]1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined. . . . [8 U.S.C. §]1252(g) is similarly narrow. That provision limits review of cases arising from decisions to commence proceedings, adjudicate cases, or execute removal orders. [The Supreme Court has] previously rejected as implausible the Government's suggestion that [section] 1252(g) covers all claims arising from deportation proceedings or imposes a general jurisdictional limitation." (alterations adopted and quotations omitted)).

Further, regarding the merits of Petitioner's pleading, "[t]he Fifth Amendment, as well as the Fourteenth Amendment, protects every [noncitizen within the jurisdiction of the United States] from deprivation of life, liberty, or property without due process of law." *Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *see Plyler v. Doe*, 457 U.S. 202, 210 (1982) ("Whatever his status under the immigration laws, [a noncitizen] is surely a 'person' in any ordinary sense of that term. [Noncitizens], even [noncitizens]

- 6 -

whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments."); *Hincapie v. United States AG*, 604 F. App'x 882, 884 (11th Cir. 2015) ("The Fifth Amendment right to due process applies to non[]citizens in removal proceedings." (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)); *Rodriguez v. Quinones, Jr.*, No. 6:26-CV-187-PGB-DCI, 2026 WL 194218, at *2 (M.D. Fla. Jan. 26, 2026) ("Noncitizens present in the United States are entitled to due process under the Fifth Amendment[, . . . including] protection against deprivations of liberty, such as immigration detention, without due process of law." (quotation omitted)). Accordingly, "[l]imitations like the Due Process Clause . . . restrict the Government's power to detain noncitizens," and "[c]ourts must review immigration procedures and ensure that they comport with the Constitution." *J.G. v. Warden, Irwin Cnty. Det. Ctr.*, 501 F. Supp. 3d 1331, 1334 (M.D. Ga. 2020) (citing *Demore v. Kim*, 538 U.S. 510 (2003)).

Here, the parties agree that the central issue is whether Petitioner's detention is governed by 8 U.S.C. § 1225 or 8 U.S.C. § 1226. *Compare* 8 U.S.C. § 1225(b)(2)(A) *with* 8 U.S.C. § 1226(a). Importantly, a noncitizen detained under section 1226 may be entitled to a bond hearing. *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that [noncitizens] detained under [section] 1226(a) receive bond hearings at the outset of detention."); *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 579–80 (2022) ("Noncitizens detained under [section] 1226(a) receive bond hearings after the Government initially detains them.").

The Supreme Court analyzed the interplay between sections 1225 and 1226 in

*Jennings v. Rodriguez*, U.S. 281, 288 (2018). In *Jennings*, the Court explained that section 1225(b) "applies primarily" to noncitizens "seeking entry into the United States." *Id.* at 297. By contrast, section 1226 applies to noncitizens "already present in the United States." *Id.* at 303; *see Johnson*, 596 U.S. at 579 (explaining that section 1226(a) "governs the detention of certain noncitizens present in the country who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since they were admitted"); *Johnson v. Guzman Chavez*, 594 U.S. 523, 543 (2021) (differentiating between sections 1225 and 1226, noting that each represents a "sequential step[] of the removal process," as section 1225 "provides instructions for inspecting [noncitizens], expediting the removal of some, and referring others for a removal hearing" while section 1226 "authorizes the arrest and detention of [noncitizens] pending a decision on whether they are to be removed"); *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) ("8 U.S.C. § 1226[] provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal."). Indeed, noncitizens present in the United States are treated differently from those seeking entry. *See Zadvydas v. Davis*, 533 U.S. 678, 679 (2001) ("Once [a noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all persons within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent."); *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those [noncitizens] who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective

- 8 -

of its legality. In the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely on the threshold of initial entry."); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (explaining that noncitizens "who have established connections in this country have due process rights in deportation proceedings," while those who are apprehended "at the threshold of initial entry" lack the same constitutional protections).

As the Supreme Court recognized in *Jennings*, sections 1225 and 1226 differentiate between noncitizens "seeking entry into the United States" and noncitizens who are "already present in the United States." 583 U.S. at 303. "Interpreting [section] 1225 to govern all noncitizens present in the country who had not been admitted leaves [section] 1226 with no apparent application." *Patel v. Hardin*, No. 2:25-CV-870-JES-NPM, 2025 WL 3442706, at *5 (M.D. Fla. Dec. 1, 2025) (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)). Simply put, Respondents' construction "would render [section] 1225(b)(2)(A)'s use of the phrase 'seeking admission' superfluous, violating one of the cardinal rules of statutory construction." *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025); *accord Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330, at *12 (5th Cir. Feb. 6, 2026) (Douglas, J., dissenting) (observing that Respondents' reading of sections 1225 and 1226 renders the phrase "[a noncitizen] seeking admission" in section 1225 "needless surplusage[] and makes several provisions of [section] 1226 surplusage as well, or, at best, mostly unnecessary because of overlapping with [section] 1225"); *see Lopez v. Hardin*, No. 2:25-CV-830-KCD-NPM, 2025 WL 3022245, at *5 (M.D. Fla.

Oct. 29, 2025) ("Interpreting [section] 1225 to govern all noncitizens present in the country who had not been admitted leaves [section] 1226 with no apparent application."); *see also Patel*, 2025 WL 3442706, at *5. On Respondents' reading, "the phrase '[a noncitizen] seeking admission' does no independent work," while Petitioner's reading gives the phrase "independent force," which fits "the statutory definition of admission as lawful entry . . . into the United States after inspection and authorization by an immigration officer." *Buenrostro-Mendez*, 2026 WL 323330, at *12 (quotation omitted). Respondents' interpretation of sections 1225 and 1226 also renders the Laken Riley Act's recent amendments to section 1226(c), "which function[] as [section] 1226's own mandatory detention provision," superfluous and ineffective, as the amendments "would have been largely unnecessary if all inadmissible noncitizens were already subject to mandatory detention without a bond hearing under" section 1225. *Id.* at *13; *accord Guaiquire v. Quinones*, No. 6:26-CV-169-RBD-RMN, 2026 WL 279369, at *6 (M.D. Fla. Feb. 3, 2026) ("Reading [section] 1225 to mean that all nonadmitted aliens present in this country are subject to mandatory detention would render the Laken Riley Act—the most recent expression of Congress's intent pertaining to immigration detainer—improperly superfluous."). Thus, the phrase "seeking admission" is "not a throwaway . . . phrase," but limits section 1225's "reach to noncitizens 'arriving' at the border." *Buenrostro-Mendez*, 2026 WL 323330, at *14; *accord Castanon-Nava*, 161 F.4th at 1061 (explaining that although a noncitizen arrested within the United States may qualify as "[a noncitizen] present

in the United States who ha[s] not been admitted," they are not "applicant[s] for admission who [are] seeking admission" (quotation omitted)).

Accordingly, most courts considering this issue have determined that noncitizens, like Petitioner, who are present in the United States and have pending asylum applications, fall under the permissive provisions of section 1226, entitling them to a bond hearing. *See Izaguirre v. Mordant*, No. 2:26-CV-00048-SPC-DNF, 2026 WL 194214, at *1 (M.D. Fla. Jan. 26, 2026) (concluding that section 1226 applied to a noncitizen "who entered the country without inspection" and was later detained within the United States, thereby entitling him to a bond hearing); *Jacobo v. Ripa*, No. 2:25-CV-1190-KCD-NPM, 2026 WL 145460, at *1 (M.D. Fla. Jan. 20, 2026) (determining that the detention of a noncitizen who "illegally entered the United States nearly [twenty] years ago" was governed by section 1226); *Ortiz v. Mordant*, No. 2:25-CV-1160-JES-DNF, 2026 WL 44815, at *1 (M.D. Fla. Jan. 7, 2026) (concluding that section 1226 applied to a noncitizen who "entered the United States without inspection," which required that he receive a bond hearing); *Ortiz v. Noem*, No. 3:25-CV-1386-MMH-MCR, 2025 WL 3653217, at *6 (M.D. Fla. Dec. 17, 2025) ("It is undisputed that [the petitioner] entered the United States without inspection and has been residing here since 2013. Thus, he is not properly detained under [section] 1225(b)(2). . . . Instead, his detention is governed by [section] 1226, and he is therefore entitled to a bond hearing before an immigration judge."); *Garcia v. Noem*, No. 2:25-CV-00879-SPC-NPM, 2025 WL 3041895, at *5 (M.D. Fla. Oct. 31, 2025) (determining that a noncitizen was entitled to a bond hearing under section 1226(a)

because he was detained within the United States); *Lopez v. Hardin*, No. 2:25-CV-830-KCD-NPM, 2025 WL 3022245, at *2 (M.D. Fla. Oct. 29, 2025) (concluding that section 1226 applied to a noncitizen who illegally entered the United States and resided within this country for more than a decade before he was detained, thus entitling him to a bond hearing); *see also Castillo Reyes v. Rose*, No. 25-7138, 2026 WL 75816, at *1 n.2, *3–6 (E.D. Pa. Jan. 9, 2026) (observing that, in this context, most courts to have considered whether a noncitizen, arrested within the United States, is detained under section 1225 or section 1226 have concluded that the latter provision governs and that the noncitizen is entitled to a bond hearing before an immigration judge); *but see Lopez v. Dir. of Enf't Operations*, NO: 3:25-cv-1313-JEP-SJH Dkt. No. 9 (M.D. Fla. Jan. 26, 2026) (disagreeing with the statutory interpretation rooted in the cannon against surplusage, that noncitizens seeking admission form "a distinct and narrower class than applicants for admission," and declining to apply language from the United States Supreme Court's decision in *Jennings,* which the court deemed inapposite dicta, while acknowledging that its interpretation represents a minority view).

In this case, Petitioner was arrested by the Orange County Sheriff's Office while physically present in the United States, "on the stated basis that he was allegedly undocumented." (Dkt. 1 at 2 (cleaned up).) Under the circumstances, the court concludes that section 1226, as opposed to section 1225, governs Petitioner's detention. *See Jennings*, U.S. at 303 (stating that section 1226 applies to noncitizens "already present in the United States"); *Johnson*, 596 U.S. at 579 (explaining that

section 1226(a) "governs the detention of certain noncitizens present in the country who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since they were admitted"); *Diaz*, 53 F.4th at 1196 (explaining that section 1226, "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal"). Yet, according to Petitioner, he remains "confined at the Orange County Jail . . . without any judicial determination authorizing detention." (Dkt. 1 at 2.) Petitioner's continued detention without a bond hearing likely violates federal law. *See Patel*, 2025 WL 3442706, at *5 ("As a noncitizen detained under [section] 1226(a), [the petitioner] has a right to a bond hearing."); *Izaguirre*, 2026 WL 194214, at *1 ("As a noncitizen detained under [section] 1226(a), [the petitioner] has a right to a bond hearing. . . . [His] mandatory detention under [section] 1225(b)(2) is [therefore] unlawful."); *Ortiz*, 2025 WL 3653217, at *6 (concluding that it was unlawful for the government to detain a noncitizen who entered the United States without inspection without the benefit of a bond hearing before an immigration judge).

In light of the above, Petitioner has shown a substantial likelihood of success on the merits. The court has jurisdiction over this habeas case, and because section 1226 applies under *Jennings*, Petitioner is entitled to—but has not yet received—a bond hearing before an immigration judge. The court agrees with Respondents that the proper remedy is to order the immigration courts to provide Petitioner with a prompt bond hearing.

### B. Irreparable Harm

"To establish irreparable harm, the movant must show that the injury is immediate and is not compensable by monetary damages." *Lead Creation Inc. v. Partnerships & Unincorporated Associations Identified on Schedule A*, No. 8:23-CV-49-CEH-CPT, 2023 WL 1993971, at *4 (M.D. Fla. Feb. 14, 2023) (quotation omitted). Here, a preliminary injunction is required, as "the deprivation of constitutional rights . . . constitutes irreparable injury." *Gayle v. Meade*, 614 F. Supp. 3d 1175, 1205 (S.D. Fla. 2020) (quotation omitted); *Rodriguez*, 2026 WL 194218, at *2. "Without interim relief to maintain the status quo, [Petitioner] could be deported or removed from this [c]ourt's jurisdiction, effectively foreclosing any recourse." *Lopez*, 2025 WL 2732717, at *2; *see Soliman v. United States*, 296 F.3d 1237, 1243 (11th Cir. 2002) (finding that a challenge solely to the petitioner's detention became moot upon his deportation); *Moore v. Ashcroft*, 251 F.3d 919, 922 (11th Cir. 2001) (concluding that a petitioner's challenge to her detention survived a mootness challenge because she also challenged her order of removal). Given the likelihood that Petitioner is being unlawfully detained—because he is entitled to a bond hearing that he has not yet received—the court deems it necessary in the interests of justice, fairness, and efficiency for Petitioner to remain nearby at the Orange County Jail and for him to receive a prompt bond hearing before an immigration judge. Petitioner has satisfied the court that irreparable harm will occur absent this relief.

### C. Balance of the Harms and Public Interest

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences" when they provide injunctive relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The balance of equities and public interest favors injunctive relief because Petitioner is being unlawfully detained absent a bond hearing. Petitioner has established not only that his threatened injuries outweigh the harms that a preliminary injunction would cause Respondents but also that a preliminary injunction would serve the public interest: ensuring due process maintains an appropriate balance of interests. *See Zadvydas*, 533 U.S. at 690; *Mejia v. Noem*, No. 2:25-cv-981-SPC-NPM, 2025 WL 3078656, at *3, 2025 U.S. Dist. LEXIS 217352, at *7 (M.D. Fla. Nov. 4, 2025) (citing *Tesfamichael v. Gonzales*, 411 F.3d 169, 178 (5th Cir. 2005), and *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)).

### D. Security

Finally, Rule 65(c) specifies that the court may issue a preliminary injunction "if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Although security is typically required, "the amount . . . is a matter within the discretion of the trial court, and the court may elect to require no security at all." *BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) (alterations adopted and quotation omitted). Having considered the matter, the court will exercise its discretion

not to require security at this time. *See Saint Remy v. Bondi*, No. 3:26-cv-28-MMH-SJH, 2026 U.S. Dist. LEXIS 5322, at *3 (M.D. Fla. Jan. 12, 2026) ("[B]ecause there is no realistic likelihood of prejudice to [the r]espondents from the issuance of this limited restraint, the [c]ourt exercises its discretion to dispense with the requirement that [the petitioner] provide security[.]"). That said, this issue may be revisited at any time, and a monetary security may be imposed should an application be made in the interest of justice.

## CONCLUSION

Accordingly:

1. Petitioner's emergency motion for a preliminary injunction (Dkt. 2) is **GRANTED**, and the TRO (Dkt. 6) entered in this case on February 3, 2026, is **CONVERTED** to a preliminary injunction.

2. Respondents and those in privity with them are **PRELIMINARILY ENJOINED** from transferring Petitioner from the Orange County Jail until further order of the court. Respondents may transfer Petitioner from the Orange County Jail for the limited purpose of the bond hearing before the immigration judge.

3. The court does not require monetary security from Petitioner for the preliminary injunction, as the court deems such security unnecessary at this time.

4. Petitioner's emergency motion for immediate release (Dkt. 15) is **GRANTED in part and DENIED in part**. The motion is **GRANTED** to the extent that, on

or before February 17, 2026, Respondents shall ensure that Petitioner receives the statutory process required under 8 U.S.C. § 1226—which includes a bond hearing—or shall release him pursuant to the terms of his Order of Release on Recognizance (Dkt. 1 at 9–11).  The motion is otherwise **DENIED.**

5. On or before February 19, 2026, the parties shall file a joint status report informing the court of the status of this case.

6. The court does not decide the ultimate merits of Petitioner's pleading (Dkt. 1) because the briefing period has not yet expired, (*see* Dkt. 4 at 2).

**ORDERED** in Orlando, Florida, on February 13, 2026.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

Office of the United States Attorney
400 W. Washington Street
Suite 3100
Orlando, Florida 32801

Kristi Noem, Secretary,
Office of the General Counsel,
United States Department of Homeland Security
2707 Martin Luther King, Jr. Ave, SE
Washington, D.C., 20528

Garrett Ripa, Miami Field Office Director,
United States Immigration and Customs Enforcement
865 SW 78th Avenue
Suite 101
Plantation, Florida 33324

USAFLM.Orlando2241@usdoj.gov